IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEMETRIC C. MARINE,
Inmate No. 1700346561,
    Plaintiff,

vs.                                          Case No.:  3:18cv2172/RV/EMT

NURSE KELLY, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 (*see* ECF Nos. 1, 5). Presently before the court is Plaintiff's amended complaint (ECF No. 8) and, upon review, the court finds that Plaintiff's factual allegations fail to state a plausible claim for relief against the named Defendants. Therefore, the undersigned recommends that this case be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[1]

Plaintiff names fives Defendants, each of whom was employed at the Escambia County Jail ("Jail") at the time of the events giving rise to this action: Nurse Kelly,

---

[1] The court previously pointed out the deficiencies in Plaintiff's (original) complaint (ECF No. 1), advised him of the legal standards applicable to his claims, and provided him with an opportunity to file an amended complaint (ECF No. 7). His amended complaint still fails to state a plausible claim. The undersigned has concluded that further amendment would be futile, as the pertinent facts fail to state—and cannot state—a constitutional claim.

Nurse Practitioner Allison, Nurse Practitioner Marty, Facility Inspector Whitmore, and Custodian Crums (ECF No. 8 at 1–3).[2]

Plaintiff essentially complains of two things: exposure to "black mold" while housed at the jail and inadequate medical treatment for the symptoms he endured as a result of the mold exposure (ECF No. 8). As to Defendant Whitmore, Plaintiff states that he filed a grievance on September 24, 2018, and thereby placed Whitmore on notice of the black mold exposure, as well as Plaintiff's symptoms, which included "harsh coughing, coughing up blood/irregular breathing" (ECF. No. 8 at 7). Plaintiff alleges that Defendant Whitmore had "constructive knowledge" of the "violation" and failed to act (ECF No. 8 at 7).

As to Defendant Crums, Plaintiff faults him for "fail[ing] to clean the shower with the proper chemicals" and never attempting to clean the black mold in Plaintiff's assigned cell or in the dayroom (ECF No. 8 at 8).

Plaintiff states that he submitted multiple sick call forms to Defendants Allison and Marty in which described his exposure to the mold and his symptoms, but he states he was not assessed (ECF No. 8 at 8). He also states he was given "mult-cold syptom [sic] pills" by a "PM nurse" but again complains that the pills were provided

---

[2] In this order the court refers to the page numbers assigned by the court's electronic filing system and not Plaintiff's handwritten page numbers or any other page numbers that may appear.

Case No.: 3:18cv2172/RV/EMT

"without [his having] been assessed by [] medical staff" (ECF No. 8 at 8). Plaintiff states his symptoms persisted after he took the cold medication and, despite submitting additional sick call forms, he was not given medical attention for "multiple days" (ECF No. 8 at 9).

Plaintiff notes he was seen by Defendant Kelly for sick call and, that during this visit, he reported his "irregular breathing breathing [sic], coughing up blood/harsh coughing" (ECF No. 8 at 9). Plaintiff claims, however, that Defendant Kelly knowingly and deliberately "inflicted pain" (in an unspecified manner) and denied Plaintiff medical treatment (ECF No. 8 at 9).

Plaintiff contends that each Defendant caused his medical symptoms described above, as well as "pain and suffering" (ECF No. 8 at 7–9).

In his Statement of Claims, Plaintiff asserts that Defendants violated his right to Due Process under the Fourteenth Amendment by exposing him to dangerous conditions and by providing inadequate medical care; he also alleges "mental anguish (pain/suffering)" (ECF No. 8 at 10). As relief, Plaintiff requests a "reasonable amount" of punitive damages from Defendants in their individual capacities, punitive and "compensary [sic]" damages from Defendants in their official capacities, and costs (ECF No. 8 at 10).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id*. (internal quotation marks and alteration omitted); *see also* Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

Case No.: 3:18cv2172/RV/EMT

While the conditions under which a convicted inmate are held are scrutinized under the Eighth Amendment's prohibition on cruel and unusual punishment, claims regarding confinement conditions and medical care for pretrial detainees are reviewed under the Due Process Clause of the Fourteenth Amendment. *See* Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979) (using the Fifth Amendment Due Process Clause); *see also* Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); Nam Dang by and through Vina Dang v. Sheriff, Seminole County Florida, 871 F.3d 1272 (11th Cir. 2017). Nevertheless, the standards are the same. Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) ("[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment to convicted persons.") ((quoting Hamm v. DeKalb Cnty., 774 F.2d 1567, 1574 (11th Cir. 1985)).

Thus, while Plaintiff cites "due process" violations under the Fourteenth Amendment in his statement of claims, his assertions are more appropriately analyzed as Eighth Amendment claims to be free from cruel and unusual punishment.[3]

---

[3] To the extent Plaintiff contends Defendants' conduct constitutes a substantive due process violation, in addition to violations of the Eighth Amendment, he cannot state a due process violation. If a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due

Case No.: 3:18cv2172/RV/EMT

To successfully assert Eighth Amendment claims regarding conditions of confinement and inadequate medical care, Plaintiff is required to satisfy both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). *see also* Hudson v. McMillian, 503 U.S. 1, 8 (1992). With regard to confinement conditions, the challenged condition must be "extreme." *Id*. at 9, 112 S. Ct. at 1000. There must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" Taylor v. Adams, 221 F.3d at 1257 (quoting Wilson v. Seiter, 501 U.S. 294, 298, (1991) (internal quotation omitted)). While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id*. at 35. Moreover,

> the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so

---

process. *See* Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Thus, substantive due process analysis is inappropriate if Plaintiff's claims are covered by another constitutional amendment. *Id.* In the instant case, Plaintiff's claims regarding his confinement conditions and his medical care are covered by the Eighth Amendment.

Case No.: 3:18cv2172/RV/EMT

grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id*. at 36. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Specifically with respect to medical care, an objectively serious deprivation requires a showing of an objectively "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002); *see also* Farmer v. Brennan, 511 U.S. 825, 834 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

Case No.: 3:18cv2172/RV/EMT

In evaluating the subjective component for both challenges, the prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8 (marks and citation omitted). The proper standard in evaluating each claim is that of deliberate indifference. Wilson, 501 U.S. at 303. Negligence does not suffice to satisfy this standard. *Id*. at 305. However, a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result." Farmer, 511 U.S. at 835. In defining the deliberate indifference standard, the Farmer Court stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 837. Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844. Consistent with foregoing standards, the Eleventh Circuit has stated that "deliberate indifference thus has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere

Case No.: 3:18cv2172/RV/EMT

negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

Specifically with regard to medical care, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. Taylor, 221 F.3d 1254. That is to say, deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980). Similarly, a difference in medical opinion between the medical staff and the inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment. *See* Estelle, 429 U.S. 97. A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris v. Thigpen, 941 F.2d 1495, 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see also* Poag, 61 F.3d at 1547 (the failure to administer a stronger medication is generally a medical judgment that is not an appropriate basis for imposing liability). To do otherwise would be "to

constitutionalize claims that sound in tort law." Hamm, 774 F.2d at 1575 (quotation omitted).

The facts as alleged by Plaintiff continue to fail to satisfy the objective component of an Eighth Amendment challenge to conditions of his confinement. The conditions of which Plaintiff complains—the presence of black mold in the shower, dayroom, and cell—are not sufficiently serious or extreme to run afoul of the Eighth Amendment. Under some circumstances, environmental conditions may constitute an unreasonable risk to an inmate's future health. For example, in Kelly v. Hicks, the court addressed the objective component of an Eighth Amendment claim based on exposure to environmental tobacco smoke ("ETS"). 400 F.3d 1282 (11th Cir. 2005). The court considered both the potential harm and the likelihood that a serious injury will be caused by exposure, and whether society considers the risk so grave that it violates contemporary standards of decency to expose someone unwillingly to such a risk. *Id*. In denying the claim, the court found that Plaintiff failed to show that his symptoms were causally linked to his exposure to ETS or that he was exposed to unreasonably high levels of ETS. *Id*. Likewise, "[s]ome exposure to black mold is a risk that society has chosen to tolerate." *See, e.g.*, McIntyre v. Phillips, No. 1:07-CV-527, 2007 WL 2986470 (W.D. Mich. Sept. 10, 2007) (finding that plaintiff's

conclusory allegations regarding the exposure to black mold fail to support the objective component of an Eighth Amendment claim where he failed to provide any evidence measuring or quantifying his level of exposure). Thus, while unpleasant, the conditions of which Plaintiff complains are not so grave as to violate contemporary standards of decency or otherwise amount to a constitutional deprivation. Moreover, Plaintiff's conclusory allegations do not quantify the amount of mold at issue or his exposure to it. Finally, the allegations of the complaint are entirely speculative regarding any causal connection between Plaintiff's symptoms—perceived by medical staff to be "cold-like" in nature—and the mold conditions where he was confined. These factors alone defeat Plaintiff's claim.

With respect to Defendant Whitmore, Plaintiff alleges he was made aware of the mold and his medical symptoms by way of Plaintiff's grievance, however, this is insufficient to state a constitutional claim. First, if there is no underlying constitutional violation, as here, there can be no supervisory liability. Moreover, as Plaintiff was previously advised (*see* ECF No. 7), even if a constitutional violation has been established, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See* Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (finding no vicarious

liability for a municipal "person" under 42 U.S.C. § 1983).  Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  <u>Wayne v. Jarvis</u>, 197 F.3d 1098,1106 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974 (2000); <u>Weaver v. Toombs</u>, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (holding that prisoner failed to state § 1983 claim against supervisory officials where prisoner merely alleged officials denied his grievance and did not allege they were personally involved in the alleged misconduct), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984).  Thus, Whitmore's knowledge of Plaintiff's grievance does not make him liable for the allegedly violative conduct brought to light by the grievance.

      What is more, Plaintiff's own version of the facts suggest that the condition was not disregarded but addressed to the extent that Defendant Crums cleaned the shower—albeit not to Plaintiff's standards.  If a reasonable attempt was made to remedy the condition, this defeats Plaintiff's assertions of deliberate indifference.  Although Plaintiff also faults Crums for failing to clean the dayroom and his cell, Crums' failure to clean the *all* of the areas referenced by Plaintiff in the grievance is at most negligent.  Therefore, Plaintiff has failed to state a plausible constituional

claim against Defendants Whitmore and Crums regarding his conditions of confinement.

Finally, as to Plaintiff's complaint of inadequate medical care, the facts as alleged likewise fail to state a plausible claim for relief. To begin, it remains uncertain whether Plaintiff has demonstrated a serious medical need in alleging "harsh coughing, coughing up blood/irregular breathing" (ECF No. 8 at 9). *Cf.* Poag, 61 F.3d at 1543 (asthma with continual breathing problems with intermittent wheezing, coughing, and hyperventilating, can constitute a serious medical need). But even if Plaintiff's symptoms constituted a serious medical need, Plaintiff has failed to establish that Defendants Marty, Allison, and Kelly knew of the risk of serious harm *and* disregarded that risk by conduct that was anything more than mere negligence.

Plaintiff complains that Defendants Marty, Allison, and Kelly failed to provide a "medical assessment," but Plaintiff admits he was seen at "sick call" by Defendant Kelly. Although Plaintiff alleges he submitted sick call forms to Defendants Allison and Marty, and was not assessed by them, he does not have the right to be seen by any particular person. It is sufficient that he was in fact seen at sick call by a medical staff member. Plaintiff also admits that he was provided with "multi cold symptom pills" by a PM nurse (ECF No. 8 at 8). Thus, by his own admission, Plaintiff was treated

and seen by medical personnel, and his disagreement with the manner or extent of the treatment does not establish deliberate indifference at the hands of Defendant Marty, Allison, or Kelly. Thus, Plaintiff's complaint fails to establish an Eighth Amendment claim with respect to inadequate medical care.

Accordingly, it is respectfully **RECOMMENDED**:

That this case be **DISMISSED**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for Plaintiff's failure to state a plausible claim upon which relief can be granted.

At Pensacola, Florida, this 17th day of May 2019.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.